UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH ANN FULGENCIO,

      Plaintiff,                        Case No. 2:21-cv-10712

                                          District Judge Linda V. Parker

v.                                   Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO DISMISS (ECF No. 7)[1]

I.      Introduction

This is a social security case.  Under 28 U.S.C. § 636(b)(1)(B) and (C), dispositive motions were referred to the undersigned for the issuance of a report and recommendation.  (ECF No. 9)  Before the Court is the Commissioner of Social Security (Commissioner)'s partial motion to dismiss (ECF No. 7) to which plaintiff, Judith Ann Fulgencio (Fulgencio), has filed a response (ECF No. 8).  After reviewing the motion and response, the undersigned determined that

_____

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

supplemental briefing was necessary in order to resolve the motion and entered an order directing the filing of such briefs.[2]  (ECF No. 11).  The parties filed the supplemental briefs (ECF Nos. 12, 13), and the matter is now ready for consideration.  For the reasons that follow, the undersigned RECOMMENDS that the Commissioner's motion be DENIED.

## II.    Background

Fulgencio challenges the denial of her social security benefits as well as the legitimacy of the Administrative Law Judge (ALJ) who denied the benefits.  *See* ECF No. 1.  As to the ALJ argument, Fulgencio asserts a constitutional claim based on *Seila Law LLC v. Consumer Financial Protection Bureau*, ___ U.S. ___, 140 S. Ct. 2183, 207 L.Ed.2d 494 (2020), arguing that statutory limitations on the removal of the Social Security Commissioner violate the separation of powers. The complaint asserts:

> Pursuant to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct.2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the Presidentdoes [sic] not have removal power and the Social Security Administration is exempt from budget limitations,

_____

[2] The parties were ordered to file supplemental briefing on the "the validity of appointments made by then Acting Commissioner of Social Security Nancy Berryhill as well as the cases dealing with standing identified by Defendant in the Notice of Supplemental authority filed on July 13, 2021." (ECF No. 11, PageID.64).  Unfortunately, the briefs were not as helpful as had hoped.  However, after the briefing in this case, there has been several recent cases from around the country which have guided the undersigned's analysis.

placing the agency wholly outside of the President's control.  Since the
Commissioner's office is unconstitutional, the ALJ's are not
constitutionally appointed.  Plaintiff is entitled to a new hearing with a
constitutionally appointed ALJ.

(*Id*., PageID.2).

The Commissioner, in lieu of an answer, filed a partial motion to dismiss

targeting the portion of the complaint challenging the legitimacy of the ALJ who

heard Fulgencio's social security case.  *See* ECF No. 7.  The Commissioner argues

that subject-matter jurisdiction is lacking over this claim because Fulgencio lacks

standing to pursue it.  (*Id*., PageID.35-36).  The Commissioner's asserts that "the

injury [Fulgencio] claims (i.e., the denial of her claims for disability benefits) is

not fairly traceable to the constitutional defect she surmises because the

Administrative Law Judge (ALJ) who decided her claim was appointed by an

Acting Commissioner who was, in fact, removable at will by the President."  (*Id*.,

PageID.36).  Further, the Commissioner argues that standing is also lacking

because "the Court cannot redress the constitutional injury Plaintiff alleges."  (*Id*.,

PageID.45).

Fulgencio argues that she does have standing to pursue her constitutional

claim and has sufficiently plead as much.  *See* ECF No. 8.  As to the traceability

issue, Fulgencio argues that while the ALJ who heard her case was appointed by an

Acting Commissioner of Social Security, Nancy Berryhill, Berryhill herself was

not properly in office when she appointed the ALJ who heard this case.  (*Id.*, PageID.57-58).  This was because Berryhill was in office longer than allowed under 5 U.S.C. § 3346.  (*Id.*).  Fulgencio further argues the redressability requirement of standing is also met because "[a]djudication of the unconstitutional defect at bar can redress harm sustained, and to be sustained, by [Fulgencio]."  (*Id.*, PageID.58).

In her supplemental brief, Fulgencio further addresses the invalidity of Berryhill's appointments.  *See* ECF No. 12.  Fulgencio stresses that Berryhill was not lawfully in office at the time she confirmed the appointment of the ALJ who heard Fulgencio's case.  (*Id.*, PageID.69-70).

In her supplemental brief, the Commissioner argues that Berryhill was eligible to serve as Acting Commissioner of Social Security under § 3346(a)(2) at the time she ratified the appointment of the ALJ who heard Fulgencio's case. (ECF No. 13, PageID.73-75).

### III.    Legal Standards

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 555, 562 (M.D. Tenn. 2020).  "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an

4

action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d. 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id*. "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id*.

> A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. Plaintiff bears the burden of establishing that subject matter jurisdiction exists.

*Id*. at 759-760 (citations omitted).

Before proceeding to the merits of a case, a court must satisfy itself that a plaintiff has standing, which is necessary to a court's jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Article III standing arises from the U.S. Constitution's "case or controversy" requirement. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must establish (1) actual or imminent injury in fact that is concrete and particularized; (2) a causal connection that establishes the plaintiff's injury is fairly traceable to the defendant's alleged conduct; and (3) that a favorable decision by the court is likely to redress the

5

plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

The plaintiff must "demonstrate standing separately for each form of relief sought"

and "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528

U.S. 167, 185 (2000)).

<h3 style="text-align:center">IV.    Analysis</h3>

<h3 style="text-align:center">A.</h3>

As alluded to above, a body of caselaw is developing in district courts

around the country addressing constitutional separation-of-powers challenges to

the Commissioner of Social Security based on *Seila Law*.  The landscape is rapidly

changing, but currently district courts appear split on the matter of whether

plaintiffs have standing to maintain such a claim. *Compare, e.g., Sylvia A. v.

Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293 (N.D. Tex. Sept. 13, 2021),

*adopting report and recommendation*, 2021 WL 4622528 (N.D. Tex. Oct. 7,

2021); *Hensley v. Kijakazi*, No. 2:21-cv-00508-VCF, 2021 WL 3472192 (D. Nev.

Aug. 6, 2021); *Albert v. Kijakazi*, No. 1:21-cv-0004-HRH, 2021 WL 3424268 (D.

Alaska Aug. 5, 2021); *Tafoya v. Kijakazi*, ___ F. Supp. 3d. ___, ___, No. 21-cv-

00871-REB, 2021 WL 3269640 (D. Colo. July 29, 2021); *Dante v. Saul*, No. 20-

0702 KBM, 2021 WL 2936576 (D. N.M. July 13, 2021) (all cases denying motion

to dismiss) *with Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897

6

(D. Nev. Sept. 29, 2021); *Cooper v. Saul*, No. 21-CV-38-CJW-MAR, 2021 WL 2908112 (N.D. Ia. July 9, 2021) (both cases granting motion to dismiss).  Most of these cases were issued after the briefing in this case was submitted.

Having reviewed the lines of authority, which will be explained in more detail below, the undersigned concludes that the cases in which courts have found that plaintiffs' claims survive dismissal are more persuasive.  The analysis in *Dante v. Saul*, No. 20-0702 KBM, 2021 WL 2936576 (D.N.M. July 13, 2021) is particularly instructive and persuasive.  In *Dante*, the plaintiff asserted a similar constitutional claim under *Seila Law* and the Commissioner responded that the plaintiff lacked standing to make such an argument.  *Id*. at *2.  In *Dante*, as here, the Commissioner argued the plaintiff could not establish the elements of traceability and redressability.  *Id*.

The court in *Dante* began by tackling the issue of whether the plaintiff could establish traceability.  *Id*.  It concluded that the plaintiff could, noting that traceability is "a causal connection establishing that [the plaintiff's] injury is fairly traceable to the Commissioner's alleged conduct."  *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  Here, as in *Dante*, Fulgencio "grounds [her] constitutional claim in the Supreme Court's rationale in *Seila Law*."  *Dante*, at *2.

7

*Dante* thoroughly summarized *Seila Law* as follows:

In Seila Law, the Supreme Court considered whether the structure of the Consumer Financial Protective Bureau ("CFPB"), and specifically its limits on the President's removal powers, violated the U.S. Constitution's separation of powers. 140 S. Ct. at 2191. The CFPB, an independent regulatory agency within the Federal Reserve system, investigated a law firm for violating the law while providing debt-relief services. *Id*. at 2191 (describing CFPB's role), 2194 (discussing CFPB's action against the law firm). The CFPB issued a civil investigative demand ("CID"), which sought information and documents related to the law firm's practices. *Id*. at 2194. The Supreme Court likened the CID to a subpoena. *See id*. The law firm refused to comply with the CID, and the CFPB filed a petition in federal court to enforce it. *Id*. The law firm defended its noncompliance by asserting that the structure of the CFPB violated the Constitution's separation of powers. *Id*. The district court found no constitutional violation and granted the CFPB's petition. *Id*. at 2194-95. The law firm appealed, and the Ninth Circuit affirmed. *Id*. The Supreme Court granted certiorari. *Id*.

Because the Supreme Court's analysis of the constitutional claim is helpful in framing the standing issue here, the Court begins *with Seila Law*'s merits analysis. The Supreme Court observed that, unlike traditional executive agencies, "Congress provided that the CFPB would be led by a single Director, who serves for a longer term than the President except for inefficiency, neglect, or malfeasance." *Id*. at 2191. The Court described the CFPB's structure as "incompatible with the structure of the Constitution" because it concentrated significant governmental power in a single individual who was "neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is." *Id*. at 2202-03. Further, the Court held that the CFPB did not fall within either of two recognized exceptions to unrestricted Presidential removal power. *Id*. at 2205-06. Noting that "[i]n our constitutional system, the executive power belongs to the President[,] . . . includ[ing] the ability to supervise and remove the agents who wield executive power in his stead[,]" the Supreme Court held that the limits upon the President's authority to remove the Director of the CFPB were unconstitutional. *Id*. at 2211. The Court remanded, instructing the lower courts to determine whether the

8

issuance of the CID was ratified by an Acting Director removable at will by the President. *Id*. at 2208-11.

The Supreme Court also broached the issue of the SSA's structure in *Seila Law*, though arguably in dicta. The Court noted that the SSA was run by a single Administrator and that the constitutionality of its structure had been questioned by former-President Clinton upon signing it into law. *Id*. at 2202 (citing Public Papers of the Presidents, William J. Clinton, Vol. II, Aug. 15, 1994, pp. 1471-72 (1995)). The Court stopped short of finding unconstitutional the for-cause restriction on removal of the SSA Commissioner; however, it described the agency's structure as "controversial." *Id*. The Court observed that, in contrast to the CFPB, "the SSA lacks the authority to bring enforcement actions against private parties[, and i]ts role is largely limited to adjudicating claims for Social Security benefits." *Id*.

Plaintiff draws upon the Court's analysis in *Seila Law* to argue that the SSA suffers from a constitutional flaw similar to that of the CFPB, noting that it is run by a Commissioner who is removable only upon satisfaction of criteria enumerated in 42 U.S.C. § 902(a)(3). *Doc. 25* at 1-2. In other words, because there are impediments to the President's removal of the SSA Commissioner, Plaintiff contends that the Commissioner, and the ALJ in turn, were unconstitutionally appointed. *Id*. at 2-3. More relevant to the issue immediately before this Court, Plaintiff asserts that *Seila Law* supports his position that he has standing to assert his constitutional claim. The Commissioner, on the other hand, insists that *Seila Law* is distinguishable and that Plaintiff lacks standing. *See Docs. 21*; *26*.

Addressing the issue of standing in *Seila Law*, the amicus curiae argued that the issuance of a CID to the law firm was not an act traceable to the alleged constitutional defect, because "two of the three [CFPB] Directors who . . . played a role in enforcing the demand were (or now consider themselves to be) removeable by the President at will." *Id*. at 2195. The amicus insisted that the "[CID] would have been issued – and would have continued to be enforced – even in the absence of the removal protection about which the law firm complained, making the asserted separation of powers dispute 'artificial.' " *Id*. The Supreme Court sided with the parties and against the amicus, however, characterizing the law firm's appellate standing as "beyond dispute." *Id*. at 2196. The Court explained that a litigant

who challenges a government action as a violation of the separation of powers need not prove, for purposes of standing, that the action would have been different had the government acted "with constitutional authority." *Id*. Rather, the Court reasoned, "[i]n the specific context of the President's removal power, [it is] sufficient that the challenger 'sustain[s] injury' from an executive act that allegedly exceeds the official's authority." *Id*. (citing *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986)).

*Id*. at *2-*3 (footnote omitted).

The *Dante* court explained that the plaintiff's position was that if the Commissioner was unconstitutionally appointed, then his power to appoint and remove ALJs was similarly unconstitutional. *Id*. at *4. The court noted that "[a]ssuming Plaintiff is correct that the Commissioner's removal protections violate the Constitution, the Court can follow Plaintiff's logic -- that is, the Commissioner acted outside his constitutional authority when he delegated to the ALJ the authority to decide Plaintiff's disability claim." *Id*. However, the court went on to say that the Supreme Court's recent decision in *Collins v. Yellen*, ___ U.S. ___, ___, 141 S. Ct. 1761, 1770 (2021) "casts doubt on the viability of this constitutional theory." *Id*. The court then went on to explain *Collins* as follows:

In *Collins v. Yellen*, a group of shareholders ("the plaintiffs") argued that the structure of the Federal Housing Finance Agency ("FHFA") violated the separation of powers, as it was led by single director who could be removed by the President only for cause. ____ U.S. ____, 141 S. Ct. 1761, 1770, ____ L.Ed.2d ____ (2021) (citing 12 U.S.C. § 4512(a), (b)(2)). Specifically, the plaintiffs challenged the constitutionality of the third amendment to an agreement that the FHFA entered into with the U.S. Department of Treasury. *Id*. The FHFA, an

10

independent agency created by the Housing and Economic Recovery Act of 2008 ("Recovery Act"), was tasked with regulating mortgage financing institutions including Fannie Mae and Freddie Mac. *Id*. The FHFA placed Fannie Mae and Freddie Mac into conservatorship and negotiated agreements with the Treasury. *Id*. Under the third amendment to the agreement between the FHFA and the Treasury, Fanny Mae and Freddie Mac transferred immense amounts of wealth to the Treasury. *Id*. Insisting that the statutory removal protections on the FHFA Director rendered its structure unconstitutional, the plaintiffs urged the Court to entirely undo the third amendment. *Id*. In support, they asserted that the third amendment was adopted and implemented by executive officers who lacked constitutional authority on account of their removal restrictions, which the plaintiffs maintained rendered both the amendment and its implementation void *ab initio*. *Id*. at 1787.

The Supreme Court agreed that the statutory restrictions on the President's power to remove the FHFA Director were unconstitutional, but it disagreed with the plaintiff's position that the officers of the FHFA therefore acted outside of their constitutional authority. *Id*. The Court reasoned that "[a]ll the officers who headed the FHFA during the time in question were properly appointed." *Id*. The Court explained:

> [a]lthough the statute unconstitutionally limited the President's authority to remove the [FHFA's] confirmed Directors, there was no constitutional defect in the statutorily prescribed method of *appointment* to that office. As a result, there [was] no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Id*. (emphasis added). The Court emphasized that there was no reason to conclude that the FHFA head lacked the authority to carry out the functions of the office. *Id*. at 1788. Referencing *Seila Law*, the Court reasoned that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office." *Id*. at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207-11).

This rationale appears to undermine Plaintiff's position that the Commissioner acted outside his constitutional authority when he delegated authority to the ALJ to decide Plaintiff's disability claim. But, curiously, the Court's analysis in *Collins* also supports a finding

11

that Plaintiff has standing to assert a constitutional claim under this now-questionable theory. Indeed, before taking up the merits of the plaintiffs' constitutional claim in *Collins*, the Court first satisfied itself that the plaintiffs had standing to assert that claim. *See id.* at 1778. The Court acknowledged that judges in the lower courts found the plaintiffs to be without standing, but it held otherwise, determining that they could demonstrate an injury in fact that was fairly traceable to the FHFA's conduct, which would likely be redressed by a favorable decision. *Id.* at 1779.

Specifically as to traceability, the Court reasoned that the plaintiffs' injury (i.e. the transfer of the value of their property rights in Fannie Mae and Freddie Mac to the Treasury) was traceable to the FHFA's adoption and implementation of the third amendment to the agreement, which was an action taken by the FHFA in its capacity as regulator. *Id.* The Court observed that "[t]he judges who thought that the [plaintiffs] lacked standing reached that conclusion on the ground that [they] could not trace their injury to the Recovery Act's removal restriction." *Id.* Yet, the Court explained that the relevant inquiry was, instead, "whether the plaintiff's injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *rev'd on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014); *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). Because the relevant executive action in Collins was the third amendment to the agreement between the FHFA and the Treasury, and because the plaintiffs' injury flowed directly from that amendment, the Court was satisfied that the plaintiffs had demonstrated traceability. *Id.*

*Id.* at *4-*5.

The *Dante* court then addressed the parties' arguments, focusing on the Commissioner's argument that "Plaintiff cannot establish traceability because the ALJ who decided his disability claim was appointed by an Acting Commissioner, who the President could remove at will." *Id.* at *6. The *Dante* court, however,

12

found that this was a distinction without a difference because under a plain reading

of 42 U.S.C. § 902(a), it determined that

> the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an *Acting* Commissioner. Although the Commissioner insists that the Acting Commissioner is not subject to the removal restrictions in § 902(a), he does not cite any particular authority for this proposition. As such, the Court rejects his argument that Plaintiff fails to establish traceability on the basis that the ALJ was appointed by an Acting Commissioner.

*Id*. at *8.

> The *Dante* court, thus, concluded that

> [g]iven the structure of the SSA, the Commissioner's statutory removal protections, the SSA's considerable discretion in appointing ALJs, and the Supreme Court's rationale in *Seila Law* and *Collins*, the Court is satisfied that Plaintiff has sufficiently alleged an injury attributable to an executive officer who he alleges lacked constitutional authority. As such, the Court finds that Plaintiff has demonstrated traceability for purposes of standing.

*Id*. The undersigned agrees with the *Dante* court's thorough analysis of both *Seila*

*Law* and *Collins*, and similarly concludes that Fulgencio has demonstrated

traceability for the purposes of standing. This is because Fulgencio's injury—the

denial of her social security claim—can be traced back to the allegedly

unconstitutional appointment of the ALJ who denied her claim.

The *Dante* court also considered whether the plaintiff had demonstrated

redressability, once again turning to *Seila Law* and *Collins*, and explaining:

The amicus in *Seila Law* argued that the law firm's constitutional defense was not presented in the proper context. *Seila Law*, 140 S. Ct. at 2196. Clarifying that removal restrictions may be challenged even absent a contested removal, the Court held that the law firm's injury "would be fully redressed if [it] were to reverse the judgment of the Court of Appeals and remand with instructions to deny the Government's petition to enforce the demand." *Id.* at 2196. Because Plaintiff here seeks a fresh disability determination by an ALJ appointed by a Commissioner stripped of removal protections, rather than the cessation of some unwanted regulatory action, *Seila Law* is not directly on point. Still, the Court's rationale provides helpful guidance.

The Supreme Court in *Seila Law* observed that its "precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power while insulated from removal by the President." 140 S. Ct. at 2196 (citing *Bowsher*, 478 U.S. at 721, 106 S.Ct. 3181; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 487, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010); *Morrison v. Olson*, 487 U.S. 654, 668, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988)). The Court went on:

> we have expressly 'reject[ed]' the 'argument that consideration of the effect of a removal provision is not 'ripe' until that provision is actually used,' because when such a provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court.

*Id.* (citing *Bowsher*, 478 U.S. at 727 n.5, 106 S.Ct. 3181) (internal quotation marks omitted). Extending this rationale to the present case suggests that Plaintiff, who was aggrieved by an unfavorable disability determination, has standing to lodge a separation of powers challenge to the structure of the Social Security Administration.

The Supreme Court recently revisited the issue of redressability for unconstitutional removal restrictions in *Collins*. There the plaintiffs' sought declaratory and injunctive relief for their removal restrictions claim, including a declaration that the subject third amendment to the agreement between the FHFA and the Treasury was unconstitutional, an injunction ordering the Treasury to return or re-characterize dividend payments made under the third amendment, an order vacating and setting aside the third amendment, and/or an order

14

enjoining the FHFA and Treasury from taking further action to implement the third amendment. *Collins*, 141 S. Ct. at 1775. The Court concluded that "a decision in the [plaintiffs'] favor could easily lead to an award of at least some of the relief that the [plaintiffs'] sought." *Id.* at 1779. As such, the Supreme Court found that the plaintiffs had standing to assert their constitutional claims. *Id.*

At the same time, the Court denied the plaintiffs' requested relief – that the third amendment be "completely undone" because it was adopted and implemented by officers who lacked constitutional authority. *Id.* at 1787. The Court described the plaintiffs' argument as "neither logical nor supported by precedent," concluding that, because there was no constitutional defect in the appointment of the FHFA Director, there was no reason to regard any of the actions taken by the agency as void. *Id.*

Addressing what could be perceived as an inconsistency with its rationale in *Seila Law*, the *Collins* Court offered the following: "What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id.* at 1788 n.24. The Court insisted that *Seila Law* merely held that a plaintiff who challenges a removal restriction "can establish standing by showing that it was harmed by an action that was taken by [an executive] officer and that the plaintiff alleges was void." *Id.* (citing *Seila Law*, 140 S. Ct. at 2195–96).

Considering the Court's rationale in *Seila Law* together with its rationale in *Collins* demonstrates that establishing redressability for purposes of standing is a far easier hurdle for plaintiffs than establishing the right to relief. Here, if Plaintiff's constitutional claim could lead to an award of the relief he seeks – a new disability determination – he meets the redressability standard.

*Id.* at *9-*10.

Again, the undersigned is persuaded by the *Dante* court's reasoning and finds that Fulgencio has met the redressability standard. This is because Fulgencio's injury—the denial of her social security claim—can be redressed if the

15

constitutional issue she complains of is resolved.  If Fulgencio succeeds in proving her constitutional claim, she would be entitled to a hearing in front of a properly appointed ALJ.

B.

Other cases, which were noted above, decided similarly to *Dante* include *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293 (N.D. Tex. Sept. 13, 2021), *adopting report and recommendation*, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021) (denying motion to dismiss); *Hensley v. Kijakazi*, No. 2:21-cv-00508-VCF, 2021 WL 3472192 (D. Nev. Aug. 6, 2021) (denying motion to dismiss); *Albert v. Kijakazi*, No. 1:21-cv-0004-HRH, 2021 WL 3424268 (D. Alaska Aug. 5, 2021) (denying motion to dismiss); and *Tafoya v. Kijakazi*, ___ F. Supp. 3d. ___, ___, No. 21-cv-00871-REB, 2021 WL 3269640 (D. Colo. July 29, 2021) (denying motion to dismiss).

In *Sylvia A.*, the court found that the plaintiff's separation-of-powers claim was both traceable and redressable for nearly identical reasons as *Dante*.  *Sylvia A.*, at *2-*4.  The court relied on *Dante* in its analysis of both traceability and redressability.  *Id*.  Similar to *Sylvia*, the court in *Albert*, also relied on *Dante* in its redressability analysis.  *Albert*, at *5.

16

In *Hensley*, the court relied solely on *Seila Law* to determine that the plaintiff had established both redressability and traceability, and noted that "[t]he likelihood of a different outcome is irrelevant to the constitutional challenge itself." *Hensley*, at *3. This means that it does not matter for the purposes of establishing redressability whether the plaintiff's social security claim is likely to succeed on remand. *See id*.

The court in *Tafoya* made a similar redressability determination based upon both *Seila Law* and *Collins*. *Tafoya*, at *5. In regard to traceability, the *Tafoya* court noted, "To prove traceability, plaintiff need only show she sustained injury from an act that allegedly exceeds the ALJ's authority." *Id*. *See also Dixie C. v. Kijakazi*, No. 3:21-CV-764-G-BN, 2021 WL 4822838, at *5–6 (N.D. Tex. Sept. 20, 2021), *report and recommendation adop*ted, No. 3:21-CV-0764-G-BN, 2021 WL 4820764 (N.D. Tex. Oct. 15, 2021) (denying motion to dismiss and holding that "[g]iven the guidance in *Seila Law* and its implicit warning in *Collins* not to conflate the issue of 'entitlement to relief' with redressability for purposes of standing, Plaintiff has established redressability for purposes of standing. And because Plaintiff has established both traceability and redressability for the purposes of standing, the Court has standing to hear Plaintiff's constitutional claim.") (internal citation omitted and citing *Dante*, 2021 WL 2936576, at *10.)); *Tristan M. v. Kilolo Kijakazi, Acting Comm'r of Soc. Sec.*, No. 20-CV-2247

(TNL), 2021 WL 4993086, at *2 (D. Minn. Oct. 27, 2021) (granting

Commissioner's motion to remand and declining to address the constitutional

separation-of-powers argument, finding that the Commissioner's failure to respond

to Plaintiff's argument "that the hearing on remand be conducted by a different

ALJ amounts to waiver of the issue.").

C.

At least three courts, however, have concluded that a plaintiff lacks standing

and have granted motions to dismiss. *See Rhouma v. Comm'r of Soc. Sec.*, ___ F.

Supp. 3d ___, ___, No. 4:20-cv-2823, 2021 WL 5882671, at *11 (N.D. Ohio Dec.

13, 2021); *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 WL 4462897 (D.

Nev. Sept. 29, 2021); *Cooper v. Saul*, No. 21-CV-38-CJW-MAR, 2021 WL

2908112 (N.D. Ia. July 9, 2021).  The undersigned finds these cases unpersuasive,

as explained below.

In *Rhouma*, the court determined that the plaintiff "lacks standing to

challenge the constitutionality of the SSA's structure." *Rhouma*, at *10.  The court

stated that "[w]ithout a harm traceable to an unlawful action by the Commissioner,

[the plaintiff] does not have standing to challenge the constitutionality of §

902(a)(3)." *Id*. at *11.  This statement ignores the fact that the plaintiff's injury—

the denial of her social security claim—can be traced back to the allegedly

18

unconstitutional appointment of the ALJ who denied her claim.  This is sufficient "harm" to establish traceability.

In *Brinkman*, the court found that the plaintiff could not demonstrate traceability and therefore lacked standing to bring her constitutional challenge. *Brinkman*, at *2.  The *Brinkman* court articulated its reasoning as follows:

> In this case, unlike *Seila Law*, Plaintiff does not allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner.  Whether Plaintiff's claim is that the statutory limitations on the President's ability to remove the Commissioner is unconstitutional or that the Acting Commissioner was in office longer than permitted under statute, Plaintiff has not alleged any facts or provided any evidence in any form suggesting that when the ALJ denied her claim for Social Security benefits, the then-SSA Commissioner played any role whatsoever in that decision.  Unlike the Director of the CFPB who was directly involved in decisions that impacted and caused alleged injury to Seila Law, Plaintiff does not allege in her Complaint, nor in response to Defendant's Motion, that the SSA Commissioner took any action that is in any way related to the ALJ's decision.
>
> Indeed, the entirety of Plaintiff's allegations regarding the Office of the Commissioner of Social Security is that, under the *Seila Law* decision, the President's inability to remove the Commissioner is unconstitutional thereby "placing the agency wholly outside the President's control.  Since the Commissioner's office is unconstitutional, the ALJ's [sic] are not constitutionally appointed. Plaintiff is entitled to a new hearing with a constitutionally appointed ALJ."  ECF No. 1-1 ¶ 9.  However, again, Plaintiff has not shown that whether the President could remove the SSA Commissioner without limitations or an acting commissioner was in office beyond the statutory 210 days allowed impacted the independence of the ALJ or his decision in Plaintiff's case.  It is well settled that the ALJ must "exercise[ ] his independent judgment on the evidence before him. . . ." *Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1562 n.1

(Fed. Cir. 1986) (quoting *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).  Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing.  *Seila Law*, 140 S.Ct. at 2196; *Collins*, 141 S.Ct. at 1779.

*Id*.

However, as the *Dante* court explained "[a]ssuming Plaintiff is correct that the Commissioner's removal protections violate the Constitution, the Court can follow Plaintiff's logic -- that is, the Commissioner acted outside his constitutional authority when he delegated to the ALJ the authority to decide Plaintiff's disability claim." *Dante*, at *4.  Accordingly, contrary to the *Brinkman* court's conclusion that the Commissioner, or Acting Commissioner as the case may be, had nothing to do with the ALJ's decision in the individual case at hand, the *Dante* court correctly surmises that the issue is that the Commissioner acted outside his constitutional authority when delegating power to the ALJ.  Fulgencio's alleged injury is not in the substantive decision, but in the fact that the decision was issued in the alleged absence of constitutional authority. In other words, Fulgencio, takes issue with the very appointment of the ALJ, rather than the Commissioner's impact on the ALJ's decision in a particular case.  A constitutional challenge against such an appointment is permissible under *Seila Law*.

20

The *Cooper* court focused on the applicability of *Seila Law* rather than standing in granting the Commissioner's motion to dismiss, although it did also hold that the plaintiff lacked standing to pursue his constitutional claim.  The court stated:

> [r]egardless of whether claimant has standing here, the Court finds that *Seila Law* does not clearly apply to the SSA because the Commissioner lacks the authority to bring actions directly against citizens like the Director of the CFPB could and did in *Seila Law*.  Claimant has cited no case that has held that *Seila Law* applies to the SSA and the Court could find none.  Absent binding authority holding that *Seila Law* applies to the SSA, this Court is unwilling to extend its holding to the SSA.

*Cooper*, at *2.  The *Cooper* court's narrow view of *Seila Law* is out of step with the majority of courts who have considered this issue.  Furthermore, a Supreme Court opinion need not deal with the precise issue at hand in order to be applicable.  There will always be differences between cases, but the holding of *Seila Law* is not so limited as the *Cooper* court suggests.  The Supreme Court in *Seila Law* simply held "that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers."  *Seila Law*, 140 S. Ct. at 2197.  This holding was not limited by the fact that the CFPB can bring actions directly against citizens as *Cooper* suggests.

Overall, for the reasons stated above, the undersigned finds that *Dante*, and other cases like it, offer the better view.  Accordingly, Fulgencio has standing to

bring her constitutional claim as plead in the complaint.  Therefore, the

undersigned recommends that the Commissioner's partial motion to dismiss be

denied.

D.

Even if Fulgencio may not ultimately succeed on her constitutional claim,

that does not alter the undersigned's recommendation.  At this stage of the

proceedings, only the narrow issue of standing is before the Court and Fulgencio's

claims must be taken as true.  Nonetheless, for the sake of completeness, the

undersigned will briefly discuss the cases deciding the constitutional claims on

their merits.

In *Kristine A. v. Comm'r of Soc. Sec.*, No. C21-5239-SKV, 2021 WL

5918128, *7-*8 (W.D. Wash. Dec. 15, 2021), the court determined that the

plaintiff could not link any harm to Commissioner's unconstitutional tenure

protection.  Additionally, the court found that lack of merit in underlying disability

claim defeated plaintiff's claim of "compensable harm."  *Id*. at *8.  Similarly, in

*Nathanial H. Kijakazi*, ___ F. Supp. 3d ___, ___, No. 6:19-CV-01280-AA, 2021

WL 5921377, at *6 (D. Or. Dec. 15, 2021), the court concluded that "although the

removal restriction in section 902(a)(3) violates the separation of powers, it does

not independently require the Court to reverse the ALJ's decision in this case."

Notably, the court also emphasized that "causation for purposes of standing and causation for purposes of the scope of the remedy are separate inquires." *Id.* Finally, in *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021), the court concluded that "even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required." The court determined remand was unnecessary because the plaintiff failed to make a "showing of any possible compensable harm flowing from § 902(a)(3)." *Id.*

In sum, while these cases may be helpful once this case reaches the summary judgment stage, they offer little insight in terms of determining whether Fulgencio has standing to pursue her constitutional claim at the pleading stage.

## V.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's partial motion to dismiss be DENIED.

Dated: December 22, 2021                        s/Kimberly G. Altman
Detroit, Michigan                               KIMBERLY G. ALTMAN
                                                United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 22, 2021.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager

25